# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of TJ Cahill    :
                            :
                            :   No.  240 C.D. 2025
                            :
                            :   Submitted:  June 16, 2026
Appeal of: TJ Cahill    :

BEFORE:   HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STELLA M. TSAI, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                     **FILED:  July 21, 2026**

TJ Cahill (Appellant) appeals from the order entered by the Court of Common Pleas of Philadelphia County (trial court) on January 27, 2025, which affirmed the decision of the City of Philadelphia, Board of License and Inspection Review (Board), revoking Appellant's license to carry a firearm in accordance with Section 6109 of the Pennsylvania Uniform Firearms Act (Act).[1]  After careful review, we affirm.

## I. BACKGROUND[2]

On October 17, 2022, the Philadelphia Police Department (City) notified Appellant that his license to carry a firearm was revoked pursuant to Section

---

[1] 18 Pa.C.S. § 6109.

[2] Unless otherwise stated, we derive the background from the Board's decision, which is supported by the record.  _See_ Bd. Op., 3/19/24, at 1-23.

6109 of the Act as the result of an incident that had occurred on October 13, 2022. Appellant appealed the revocation to the Board, which voted to affirm.

The Board made the following findings. On October 13, 2022, Appellant went to St. Mark's Church. Two separate meetings were being held at the Church that evening, one of which was a meeting with members of the community and Philadelphia police officers.[3] Posted on the church's premises, around three entrances,[4] were signs stating "Notice. All weapons including concealed firearms are prohibited on these premises." Appellant entered through one of those entrances. Nevertheless, Appellant brought firearms[5] onto the church's premises.

While greeting attendees in the church courtyard, Christina Mancini, Senior Warden[6] for the church, observed Appellant carrying a firearm on his hip, and also heard meeting attendees discussing that someone had entered the courtyard with a firearm. *See* Tr. of Test. (T.T.), 3/19/24, at 25. Ms. Mancini recognized Appellant from prior encounters at other community meetings. *See id.* at 24. She approached Appellant and informed him that firearms were prohibited on the property. Ms. Mancini advised Appellant that he could secure the firearm elsewhere and return, but that he could not remain on church property while armed.

---

[3] The other meeting was a men's self-help group who meet weekly at the church. *See* Tr. of Test. (T.T.), 3/19/24, at 29.

[4] One sign was located at the church's courtyard gate, which was the entrance used by those attending the two meetings on October 13, 2022. *See* T.T., 3/19/24, at 22. A second sign was located at the entrance to the parking lot. *See id.* at 23. The third notice was located immediately before the basement door, which was also used to access the building. *See id.*

[5] It is unclear how many firearms Appellant brought into the church. Appellant's testimony suggests that he was carrying more than one firearm. *See* T.T., 3/19/24, at 88 ("[The police] took pictures of the serial numbers of my weapons, and they just asked me what kind of weapons I had.").

[6] Ms. Mancini testified that her role makes her responsible for the property and all legal, financial, and day-to-day operations, as well as worship in the absence of clergy. *See* T.T., at 19-20.

2

According to Ms. Mancini, Appellant initially appeared cooperative and began walking toward the courtyard exit. After taking a few steps, however, she observed individuals ducking and screaming, "Gun. He's got a gun. He's pointing a gun." *Id.* at 27. Ms. Mancini moved through the crowd and positioned herself between Appellant and the attendees as a "buffer." *See id.* at 32. Ms. Mancini stated that she did this because she was afraid for the attendees and "[t]hat if anyone were to be shot that evening, it [would be] me and not someone coming to my church." *Id.* at 44. She also stated that one of the attendees had told her that the firearm was out of the holster and pointed at someone. *See id.* at 51-52. At that point, she informed Appellant that he was permanently banned from the church property and needed to leave.

According to Ms. Mancini, Appellant responded that he knew his rights, that the property was public, and that he could return whenever he wished. Ms. Mancini testified that Appellant insisted that someone had attempted to attack or rob him and that he kept his hand on his holstered firearm while Ms. Mancini was talking to him.[7] The Board, however, found that the individual whom Appellant identified as the aggressor was merely engaged in ordinary conversation with others present at the church.[8] Ms. Mancini testified that this individual was holding a cup of coffee and talking with other individuals. *See id.* at 33-34. She further stated that prior to the incident, the volume of conversation of the individuals in the courtyard was "conversational volume." *Id.* at 30. Appellant left the courtyard and called the police, and the city police officers who later arrived at the church for the meeting

---

[7] Ms. Mancini testified that Appellant's "story was changing" regarding this. *See* T.T., 3/19/24, at 32. "He was calling 911 saying he was being actively attacked, that he was in fear for his life, that people were trying to kill him." *Id.* at 33.

[8] Ms. Mancini testified that this individual belonged to the men's self-help group meeting at the church and that she observed this group every week. *See* T.T., 3/19/24, at 29.

handled the situation thereafter. The Board found Ms. Mancini's testimony to be credible.

Gregory Bucceroni[9] arrived at the scene and noticed a "large disturbance" and that "people were screaming and shouting that someone tried to pull a gun on them." *Id.* at 59-60. By the time Mr. Bucceroni arrived, the police were already involved and talking with Appellant in what Mr. Bucceroni observed to be a heated conversation. *Id.* at 61. Eventually, Mr. Bucceroni approached Appellant to understand what had happened, noticed the firearm holstered on his hip, and asked Appellant about it. Mr. Bucceroni testified that Appellant started shouting and placed his hand on the handle of the holstered firearm. *Id.* at 62. Mr. Bucceroni testified that he took this as an aggressive action and was concerned. *Id.* Additionally, Mr. Bucceroni confirmed that Appellant used politically charged language towards him.[10] *Id.* at 62-63. The Board found Mr. Bucceroni's testimony to be credible.

Appellant maintained that he never threatened Ms. Mancini and did not see anyone at the church ducking or getting out of the way from him.[11] Additionally, Appellant stated that someone originally called the police on him, but that he also called the police because he did not feel safe. *See id.* at 99-100, 104. Further, Appellant testified that, once outside the church premises, someone asked him for money in an aggressive manner and that he felt threatened. *See id.* at 106-07. The Board found Appellant's testimony to be self-serving and not credible.

_____

[9] Mr. Bucceroni works for the City in the managing director's office, and part of his job involves him attending community-police meetings like the one at the church.

[10] Mr. Bucceroni confirmed that Appellant called him a "liberal junkie antifa member." T.T., 3/19/24, at 63, 71. Appellant denies this. *See* T.T., 3/19/24, at 93.

[11] However, Appellant testified that "[i]f people weren't happy that I brought a gun, they yelled he had a gun on him as I was approaching the church. And yes, I did have a gun on me." T.T., 3/19/24, at 95.

Appellant appealed the Board's decision revoking his license to carry to the trial court, which took no additional evidence and affirmed. Appellant timely appealed to this Court and filed a court-ordered statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) (Rule 1925(b)). The trial court issued a responsive opinion.

## II. ISSUES

Appellant presents three issues for our review, which we have restated and reordered for ease of analysis. First, Appellant contends that the Board erred because its decision relied solely upon hearsay evidence. *See* Appellant's Br. at 4, 9-10, 14-16. Second, according to Appellant, there was no evidence of record that Appellant would likely act in a manner dangerous to public safety. *See id.* at 4, 9-19. Third, Appellant asserts that his right to bear arms provided by the Second Amendment was infringed upon by the deprivation of his license to carry. *See id.* at 10, 20-23.[12]

---

[12] We will not address this issue because it is waived. Appellant did not preserve this issue before the Board's hearing. *See Roomet v. Bd. of License & Inspection Rev.*, 928 A.2d 1162, 1165 n.2 (Pa. Cmwlth. 2007) ("Section 753(a) of the Local Agency Law incorporates the waiver doctrine by requiring all legal questions be raised before the administrative agency hearing the appeal."); 2 Pa.C.S. § 753(a). Appellant's brief to the trial court does not successfully raise this issue either, as it only makes a conclusory allegation that Appellant has a right to bear arms. *See* Appellant's Trial Ct. Br., 9/3/24, at 6 ("Appellant's right to bear arms is codified in the Pennsylvania Constitution, article I § 21. While this right can be abridged, it can only be done for good cause shown. In the present case, a full review of the facts reveals no good cause to deprive Appellant of his Constitutional right."). Because Appellant has failed to raise this issue properly before the Board and the trial court, this issue is waived.

## III. DISCUSSION[13]

Under the Act, an issuing authority may revoke an individual's license to carry a firearm for good cause. 18 Pa.C.S. § 6109(i). In this context, good cause exists if the individual's "character and reputation is such that the individual would be likely to act in a manner dangerous to public safety." 18 Pa.C.S. § 6109(e)(1)(i). The General Assembly "intended Section 6109 of the Act to confer discretion on [the issuing authority], empowering them to exercise judgment in applying the Act's standards to determine if applicants should be licensed," a decision that "also applies to the revocation of a license." *Morley v. Phila. License & Inspection Unit*, 844 A.2d 637, 640-41 (Pa. Cmwlth. 2004). "[W]hether good cause exists for a firearms license revocation is a legal conclusion that must be based on factual findings." *Rodriguez v. Hanna* (Pa. Cmwlth., No. 917 C.D. 2021, filed Oct. 12, 2022), slip op. at *3 (internal quotations omitted).[14] A firearms license revocation is upheld only "when the evidence supports a conclusion that an individual licensed to carry a firearm does not possess the requisite character and reputation to do so." *Tsokas v. Bd. of License & Inspection Rev.*, 777 A.2d 1197, 1202 (Pa. Cmwlth. 2001).

### A. Hearsay

Appellant contends that the Board improperly relied solely on hearsay testimony from witnesses who did not see Appellant display or brandish his weapon.

---

[13] The parties presented no additional evidence to the trial court. Therefore, our review is limited to determining whether the Board committed an abuse of discretion or an error of law. *See German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012). The Board abuses its discretion if its findings are not supported by substantial evidence. *See Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth. 2007). Substantial evidence is "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Twp. of Exeter v. Zoning Hr'g Bd.*, 962 A.2d 653, 659 (Pa. 2009).

[14] Unreported opinions of this Court issued after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b)(1); 210 Pa. Code § 69.414.

6

*See* Appellant's Br. at 14-16 (citing *Goodman v. Commonwealth*, 511 A.2d 274 (Pa. Cmwlth. 1986) (analogizing that without "independent corroborating evidence to support the necessary factual findings," the finding that the appellant lacked fitness for firearms renewal could not stand)). Appellant asserts that neither witness presented by the City personally observed him remove his firearm from its holster or point it at another individual and that the allegations underlying the revocation were based entirely on statements made by unidentified third parties. *See id.* Thus, Appellant argues, the Board's findings rested solely on uncorroborated hearsay and, therefore, cannot support revocation of his license. *See id.*

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Unless an exception applies, hearsay is generally inadmissible. *See* Pa.R.E. 802. The administrative context, however, provides a nuanced evidentiary rule. Section 505 of the Administrative Agency Law provides that Commonwealth agencies "shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." 2 Pa.C.S. § 505. Consequently, hearsay evidence may ordinarily be admitted and considered in administrative proceedings. *See A.Y. v. Commonwealth, Dep't of Pub. Welfare, Allegheny Cnty. Children & Youth Servs.*, 641 A.2d 1148, 1150 (Pa. 1994).

This principle is not without limitation. This Court has held that an administrative decision concerning a license to carry a firearm cannot rest solely upon hearsay evidence. *Goodman v. Commonwealth*, 511 A.2d 274, 277 (Pa. Cmwlth. 1986). "Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding of the Board," but "[h]earsay evidence, [a]dmitted

without objection, will be given its natural probative effect and may support a finding of the Board, [i]f it is corroborated by any competent evidence in the record, but a finding of fact based [s]olely on hearsay will not stand." *Walker v. Unemployment Comp. Bd. of Rev.*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). In other administrative agency proceedings, our Pennsylvania courts have held that "the hearsay rule is not a mere technical rule of evidence, but a fundamental rule of law which ought to be followed by agencies when facts crucial to the issue are sought to be placed on the record and an objection is made thereto." *A.Y.*, 641 A.2d at 1151. Likewise, our Supreme Court has cautioned that "[a]lthough less process is due in an administrative proceeding than where criminal charges have been brought," an individual should not be required to sacrifice "inherent and indefeasible rights" for the sake of administrative or prosecutorial convenience. *A.Y.*, 641 A.2d at 1152.

Here, Appellant focuses on Ms. Mancini's testimony, elicited on cross-examination, that the attendees told her that Appellant had pointed his firearm at another individual.[15] *See* Appellant's Br. at 15-16. Appellant asserts that the Board

---

[15] Specifically, the hearing transcript reads:

> Q. And when you said that people were making a scene or whatever the term you used, you did not see everything that went on between Mr. Cahill and that group of individuals. Isn't that correct?
>
> A. That's correct.
>
> Q. And isn't it also correct that his gun was open and obvious and that some people could just yell gun, and just because there is a gun?
>
> A. No, that was not the context. The context was that he had pointed the gun at someone. That's what people were saying that he had pulled and pointed. I did –
>
> [Appellant's Counsel]: Objection as to this because you didn't see it, number one, and there's no evidence. But in any of the documents that I have that he's

8

clearly relied exclusively upon this hearsay evidence to revoke his license. *See* Appellant's Br. at 16. Although Appellant's counsel objected to this evidence on cross-examination, it is cumulative of prior evidence *not objected to* by Appellant's counsel. On direct examination, Ms. Mancini testified that after Appellant agreed to leave the courtyard, "[h]e took just a few steps. And before, before I knew it, everyone was kind of ducking out of the way, and people were calling out and screaming, 'Gun. He's got a gun. He's pointing a gun." T.T., 3/19/24, at 27. Appellant's counsel did not object to this statement or line of questioning during direct examination. *See id.* at 27-35.

Similarly, Mr. Bucceroni testified that "I noticed the disturbance and people saying someone had a gun . . . people were screaming and shouting that someone tried to pull a gun on them. Then one of the attendees . . . pointed to [Appellant] and said that there was some type of thing where he pulled out a firearm and threatened someone." *Id.* at 59-60. Appellant's counsel again did not object to this statement or line of questioning during direct examination. *See id.* at 59-61. Therefore, because this testimony was admitted without objection, any error in admitting Ms. Mancini's later testimony was harmless, as it was cumulative of substantially similar evidence already in the record.[16] *See Commonwealth v.*

---

been now charged with pulled or pulling the gun. There's nothing that I have that says –

[Hearing examiner]: Okay. [Counsel], you asked the specific question. That was her response. She didn't say he pulled it on her. She just [said] that that's how the crowd reacted. That was her response. So if you want a different answer, ask a different question.

T.T., 3/19/24, at 50-51.

[16] Additionally, we note that this testimony would be admissible as an excited utterance. *See* Pa.R.E. 803(2). An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is

*Johnson*, 838 A.2d 663, 674 (Pa. 2003) (finding that the erroneous admission of hearsay is harmless where such evidence is merely cumulative of other untainted, substantially similar evidence).

Moreover, there is corroborating evidence to support an inference that Appellant acted in a threatening manner. Ms. Mancini testified that attendees who had previously been engaged in ordinary conversation suddenly began ducking, moving away from Appellant, and screaming that he was pointing a gun. *See* T.T., 3/19/24, at 27-31. Ms. Mancini further testified that the attendees appeared afraid, which prompted her to move through the crowd and position herself between Appellant and the attendees. *See id.* at 30-31. In addition, both Ms. Mancini and Mr. Bucceroni testified that they observed Appellant keeping his hand on his holstered firearm during confrontational exchanges and perceived that conduct as threatening. *See id.* at 33, 62. Mr. Bucceroni independently testified that he heard people in the church courtyard screaming that "someone tried to pull a gun on them." *Id.* at 59-60.[17] Mr. Bucceroni additionally confirmed that he observed Appellant engaging in a heated discussion with police officers and used confrontational language towards himself and others present. *See id.* at 61-63.

---

unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition." *Id.*

Here, Ms. Mancini testified that, after Appellant initially agreed to leave the courtyard, attendees suddenly began ducking, moving out of the way, and shouting, "Gun. He's got a gun. He's pointing a gun." The statements were made spontaneously amid an unfolding disturbance, and by individuals present during the disturbance. The accompanying conduct of the declarants, screaming, ducking, and attempting to move away, demonstrates that they were still under the stress of the perceived event when the statements were made. Although the declarants were unidentified, the surrounding circumstances sufficiently corroborate that they personally perceived the event. Additionally, Mr. Bucceroni independently testified that he arrived to find attendees screaming and shouting that someone tried to pull a gun on them. *See* T.T., 3/19/24, at 59-60. Accordingly, the statements would qualify as excited utterances.

[17] Appellant did not object to this testimony. *See* T.T., 3/19/24, at 59-06

10

Finally, the Board did not expressly find that Appellant removed his firearm from its holster or pointed it at another individual. Rather, the Board concluded that the totality of the circumstances supported revocation under Section 6109 of the Act. *See* Bd. Op. at 22-23. The Board relied upon the surrounding circumstances, witness testimony, and credibility determinations in concluding that Appellant was likely to act in a manner dangerous to public safety.

## B. Substantial Evidence

Additionally, Appellant asserts that substantial evidence does not support the Board's decision. *See* Appellant's Br. at 11-19. Specifically, Appellant avers that the evidence does not establish that his character and reputation are such that he is likely to act in a manner dangerous to public safety. *See id.* According to Appellant, the record contains no evidence that he brandished his weapon, uttered a threat, or otherwise acted in a dangerous manner. *See id.* at 13-14 (citing *In re McCrane* (Pa. Cmwlth., No. 1749 C.D. 2016, filed Dec. 8, 2017)). Appellant contends that he cooperated with authorities throughout the incident, was never arrested or charged, and engaged in conduct readily distinguishable from prior cases in which firearm license revocations were upheld based on threats, brandishing weapons, or other dangerous behavior. *See id.* at 17-19. Therefore, Appellant requests that his license to carry a firearm be reinstated. *See id.* at 23.

In assessing whether substantial evidence supports the agency's decision, we consider "whether there is such relevant evidence of record which a reasonable person might accept as adequate to support a conclusion." *Mulberry Mkt., Inc. v. City of Phila., Bd. of License & Inspection Rev.*, 735 A.2d 761, 767 (Pa. Cmwlth. 1999). "It does not matter that there is evidence in the record which supports a factual finding contrary to that made by the factfinder." *Id.* "[T]he

11

pertinent inquiry is whether there is any evidence which supports the factfinder's factual finding." *Id.* It is solely for the factfinder to assess credibility, to resolve conflicts in the evidence, and to determine the weight given to any evidence. *See id.* Such determinations are not to be disturbed on appeal. *See Cambria Cnty. Transit Auth. (CamTran) v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019).

On appeal, we must examine the testimony in the light most favorable to the prevailing party, affording that party the benefit of all logical and reasonable inferences. *See Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018). Whether the record contains evidence supporting findings other than those made by the Board is irrelevant; "the critical inquiry is whether there is evidence to support the findings actually made." *Id.*

Viewing the testimony in the light most favorable to the Board as the prevailing party, *see Sipps*, 181 A.3d at 484, we find that substantial evidence supports the Board's decision. The Board credited Ms. Mancini's testimony that Appellant entered the church's property, while possessing firearms, despite posted notices prohibiting firearms; that attendees became terrified and were screaming after an incident involving Appellant; and that the attendees began ducking out of the way after exclaiming that Appellant was pointing a gun. *See* T.T., 3/19/24, at 22-23, 27-35. Ms. Mancini further testified that she feared for the safety of those present in the church courtyard. *See id.* 27-32. The Board also credited her testimony that Appellant kept his hand on his firearm, while insisting that he had been attacked or robbed, and stated that he knew his rights and could return to the property. *See id.* at 32-33.

12

The Board also credited Mr. Bucceroni's testimony that, upon arriving at the scene, he observed a large disturbance, heard the attendees screaming that someone had pulled a gun on them, and also observed Appellant in a heated exchange with police officers. *See id.* at 59-63. Mr. Bucceroni further testified that Appellant began shouting, placed his hand on the handle of his holstered firearm, and used confrontational language towards himself and others. *See id.* at 61-63. The Board was entitled to credit this testimony and to reject Appellant's contrary version of events as self-serving and not credible.

Although Appellant emphasizes that he was not arrested or criminally charged, the absence of criminal charges does not preclude a finding of good cause under Section 6109. The relevant question is whether the evidence supports the Board's conclusion that his character and reputation are such that he would be likely to act in a manner dangerous to public safety. 18 Pa.C.S. § 6109(e)(1)(i), (i). Nor does the existence of contrary evidence require reversal. *See CamTran*, 201 A.3d at 947. Under our standard of review, we may not reweigh the evidence, reassess credibility, or substitute our judgment for that of the Board. *See id.*; *Mulberry Mkt., Inc.,* 735 A.2d at 767.

Taken together, the credited testimony established that Appellant brought firearms onto property where weapons were expressly prohibited, became involved in a disturbance that caused attendees to fear for their safety, kept his hand on his firearm during confrontational exchanges, and continued to insist upon his right to return to the property despite being told that firearms were prohibited and that he was banned from the premises. *See generally* T.T., 3/19/24. This evidence was sufficient for the Board to conclude that revocation of Appellant's license to

13

carry was warranted under Section 6109 of the Act. *See Tsokas*, 777 A.2d at 1202. Therefore, substantial evidence supports the Board's decision.

## IV. CONCLUSION

The Board properly considered the totality of the evidence, made reasoned credibility determinations, and issued findings supported by substantial evidence. *CamTran*, 201 A.3d at 947; *Mulberry Mkt., Inc.,* 735 A.2d at 767. Additionally, the Board did not rely solely upon hearsay evidence to make its determination, in compliance with *Goodman*, 511 A.2d at 277 and *Walker*, 367 A.2d at 370.

Accordingly, we affirm.

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of TJ Cahill      :
                                   :
                                   :    No. 240 C.D. 2025
                                   :
                                   :
Appeal of: TJ Cahill          :

## **O R D E R**

AND NOW, this 21st day of July, 2026, the order of the Court of Common Pleas of Philadelphia County, entered January 27, 2025, is AFFIRMED.

 

**LORI A. DUMAS, Judge**